UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COALITION FOR COMPETITIVE ELECTRICITY, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>AUDREY ZIBELMAN, in her official capacity as Chair of the New York Public Service Commission *et al.*,<br><br>      Defendants. | Docket No. 1:16-CV-8164 (VEC/KNF) |

**PLAINTIFFS' MEMORANDUM REGARDING**
***ALLCO FINANCE LIMITED v. KLEE***

Stuart H. Singer (pro hac vice)
William T. Dzurilla (pro hac vice)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
wdzurilla@bsfllp.com

Jonathan D. Schiller
David A. Barrett
BOIES SCHILLER & FLEXNER, LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
dbarrett@bsfllp.com

Edward J. Normand
Jason C. Cyrulnik
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
enormand@bsfllp.com
jcyrulnik@bsfllp.com

July 10, 2017

Pursuant to the Court's June 29, 2017 Order (ECF 153), Plaintiffs address *Allco Finance Limited v. Klee*, no. 16-2946, __ F.3d __, 2017 WL 2782856 (2d Cir. June 28, 2017). As demonstrated below, *Allco* further supports Plaintiffs' arguments against dismissal of this action.

## I. Standing

*Allco* held that the plaintiff in that case had standing to pursue both preemption and Commerce Clause claims. *Allco* slip op. ("Op.") at 23-25, 41. Just as Defendants do here, the *Allco* defendants argued that the plaintiff lacked standing to bring a preemption claim under the Federal Power Act ("FPA") in light of *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S.Ct. 1378 (2015). *See* Brief of Katherine S. Dykes, *et al.* (No. 16-2946, ECF 128) at 28-30. The Second Circuit upheld standing without mentioning this argument, thus effectively rejecting it. Accordingly, *Allco* supports Plaintiffs' standing here.

## II. Preemption

*Allco*'s preemption analysis is entirely consistent with Plaintiffs' position in this case. Indeed, *Allco* found that the renewable generation contracts addressed by the Connecticut REC program "are the kind of traditional bilateral contracts between utilities and generators that are subject to FERC review for justness and reasonableness. . . . They are, in other words, precisely what the *Hughes* court placed outside its limited holding." Op. at 34 (citations omitted). In applying the factors set out in the *Hughes* opinion, *Allco* focused on three specific points, all of which support Plaintiffs' position here.

*First*, although the plaintiff in *Allco* contended the Connecticut program compelled LSEs to contract with the renewable generators who were the "winning bidders," the Second Circuit found that the challenged RFP did ***not*** require forced purchases, but rather allowed LSEs discretion to accept or reject bids,. Op. at 28-30. Just the opposite is the case here – New York

1

LSEs have no right to decline to enter into ZEC purchase contracts with NYSERDA, which acts solely as a middleman between the LSEs and the subsidized nuclear generators. Complaint ¶¶ 69, 73; ZEC Order (ECF 42-2) at 151 ("Each Load Serving Entity is directed to enter into a contractual relationship with NYSERDA to periodically purchase ZECs during a program year . . . .").

*Second*, in the Connecticut program, any voluntary bilateral contracts between LSEs and renewable generators to purchase RECs take effect only if and when they are approved as "just and reasonable" by FERC (Op. at 34). FERC's review considers, *inter alia*, whether the contract was the product of good-faith, arms-length negotiation. *See Morgan Stanley Capital Group Inc. v. Public Utility Dist. No. 1*, 554 U.S. 527, 548 (2008). In stark contrast to Connecticut, under the New York program, LSEs are compelled to enter into ZEC purchase contracts that are **not** conditioned on any type of FERC review or approval, and the contract price is set by state regulation, not arms-length negotiation.

*Third*, the *Allco* Court found that the voluntary, bilateral Connecticut REC contracts did not have the "fatal defect" that afflicted the Maryland contracts in *Hughes,* because the Connecticut program "transfers ownership of electricity from one party to another by contract, independent of the [FERC-regulated wholesale energy] auction." Op at 34. Here, Exelon's favored New York nuclear plants will receive ZECs only to the extent that they produce electricity, with the ZEC price directly tethered to wholesale electricity prices, and all electricity these plants produce is sold (*i.e*., cleared) in the FERC-regulated wholesale auction markets run by NYISO. Complaint ¶¶ 34, 64, 69 (a "nuclear facility is only entitled to ZECs to the extent it 'produces' electricity, and the designated facilities have no choice but to sell their production in

the NYISO wholesale auctions"), ¶¶ 70-72.  Accordingly, the ZEC program suffers from the "fatal defect" recognized in *Hughes* and *Allco*.

The *Allco* plaintiff also argued that, even though the Connecticut program was unrelated to the FERC-approved auctions, any resulting contracts would place "downward pressure" on wholesale prices.  Op. at 38.  The Second Circuit held that such effects were too "indirect" and "incidental" to require preemption, in contrast to the Maryland subsidy at issue in *Hughes*, where the subsidies were "tethered to a generator's wholesale market participation" or conditioned "on capacity clearing the auction."  *Id*. at 38-39 (quoting *Hughes*, 136 S.Ct. at 1299).  Unlike the Connecticut program, the New York ZEC program ***does*** subsidize nuclear generators that must and do sell their output solely through FERC-regulated auctions, with the subsidy price directly tethered to wholesale market prices, and with the subsidy necessarily paid only to production that clears the auction.  Complaint ¶¶ 34, 64, 69-72.

*Finally*, *Allco* involved RECs, which are different from ZECs for the many reasons set forth in previous filings in this action.  *See* Complaint ¶ 49; ECF 95 (Plaintiffs Opp. Br.) at 28-31; ECF 150-1 (Am. Wind Energy Ass'n Amicus Br.) at 8-12.  For all of the foregoing reasons, *Allco* provides no support for dismissal of Plaintiffs' preemption claims.

### III. Commerce Clause

The facts on which the Second Circuit relied in dismissing Allco's Commerce Clause claims are absent here.  *First*, Connecticut's program did not require utilities to purchase RECs at all; it simply *permitted* LSEs to use RECs to meet their renewable energy portfolio ("RPS") requirements, which they otherwise had to satisfy by generating renewable energy themselves.  Op. at 18.  The New York ZEC program affords LSEs no such flexibility in responding to market conditions.  Rather, it requires all LSEs to purchase ZECs (from NYSERDA as a pass-

3

through) solely from the favored in-state Exelon nuclear plants.  Complaint ¶¶ 69, 73; ZEC Order (ECF 42-2) at 151 ("Each Load Serving Entity is directed to enter into a contractual relationship with NYSERDA to periodically purchase ZECs during a program year . . . .").

*Second*, the *Allco* court considered at length the geographic discrimination inherent in the Connecticut program, under which the state's RPS requirements could be met only by using RECs sold by generators located in seven states (and two Canadian provinces) that physically delivered electricity into the power grid serving Connecticut.  Op. at 19-20.  The court found no discrimination against generators located elsewhere because the burden on commerce was not "excessive in relation to the putative [local] benefits."  Op. at 41-53.  Those benefits included Connecticut's "interest in encouraging the development of new renewable energy generation facilities that are able to transmit their electricity into the ISO-NE grid" which serves Connecticut.  Op. at 20.

In this regard, a "significant" consideration for the court in *Allco* was that "FERC . . . has created the geographic distinctions on which Connecticut's program is predicated."  The state program "piggybacks on top of geographic lines drawn," not by the state to facilitate economic protectionism, but by the ISO "supervised by FERC."  Op. at 51-52.  These geographic distinctions reflect "the economic wisdom and health and safety effects" of "regionalization of the national electricity market" that FERC has authorized, with no "indication that this structure is unduly harmful to interstate commerce."  Op. at 52.  This case is far different.  New York did not "piggyback" on the "economic wisdom" of FERC-drawn lines, but rather acted with protectionist intent to favor selected in-state nuclear plants to the exclusion of similarly situated out-of-state facilities.  Complaint ¶¶ 68 (ZEC program is limited to nuclear facilities that have made a "historic contribution" to New York's resource mix, of which none are located out-of-

state), ¶ 96 ("The ZEC Order is purely protectionist in nature, enacted for political reasons to save jobs at the subsidized generators and the property tax revenues therefrom"). As a result, while some ninety percent of the Connecticut RECs came from out-of-state electricity generators (Op. at 43 n.16), under the New York ZEC program there will be zero ZEC payments made to out-of-state producers.

For these reasons, the *Allco* decision further supports the viability of Plaintiffs' Commerce Clause claims.

July 10, 2017                                                                 Respectfully submitted,

|  |  |
|---|---|
|  | By: /s/ Jonathan D. Schiller |
| Stuart H. Singer (pro hac vice) | Jonathan D. Schiller |
| William T. Dzurilla (pro hac vice) | David A. Barrett |
| BOIES, SCHILLER & FLEXNER LLP | BOIES SCHILLER & FLEXNER, LLP |
| 401 East Las Olas Blvd. Suite 1200 | 575 Lexington Avenue |
| Fort Lauderdale, FL 33301 | New York, New York 10022 |
| Telephone: (954) 356-0011 | Telephone: (212) 446-2300 |
| ssinger@bsfllp.com | jschiller@bsfllp.com |
| wdzurilla@bsfllp.com | dbarrett@bsfllp.com |
|  | |
|  | Edward J. Normand |
|  | Jason C. Cyrulnik |
|  | BOIES, SCHILLER & FLEXNER LLP |
|  | 333 Main Street |
|  | Armonk, NY 10504 |
|  | Telephone: (914) 749-8200 |
|  | enormand@bsfllp.com |
|  | jcyrulnik@bsfllp.com |